IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-01498-WYD

DAVID W. HISERODT,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's claim for disability insurance benefits and supplemental security

income payments.  For the reasons stated below, this case is reversed and remanded

for further fact finding.

I.    INTRODUCTION AND BACKGROUND

Plaintiff filed his application for disability benefits in May 2006, alleging that he

became unable to work as of September 2000 due to multiple medical conditions,

including spinal injuries, carpal tunnel syndrome, and gastrointestinal problems.

(Transcript ["Tr."] 98-106, 121.)  Plaintiff, born in February 1962, was 37 years old on

September 1, 2000, the date he alleged that he became disabled, and 45 years old on

the date of the ALJ's decision in this case.  (*Id.* 31, 98.)  He graduated from high school,

obtained a Bachelor of Science degree in sports medicine, and completed chiropractic

college.  (*Id*. 31, 127.)  He worked as a chiropractor, salesman, and investment sales

manager.  (*Id*. 148.)

According to his Opening Brief, Plaintiff first began experiencing medical

problems in 1999 when he was working as a chiropractor.  His symptoms were

exacerbated by a car accident in 2000, and allegedly rendered him unable to continue

working as a chiropractor.  (Tr. 98, 121.)  Plaintiff alleges that he suffers from bilateral

carpal tunnel syndrome and epicondylitis which cause pain in his upper extremities[1],

back pain with radiculopathy due to disc protrusions in the cervical and lumbar spine

and thoracic ligament injury, gout, irritable bowel syndrome, gastrointestinal problems,

high blood pressure, anxiety, depression; and bipolar disorder.

Plaintiff's application was denied at the initial determination stage.  (Tr. 58-71,

73-84.)  After a hearing on April 29, 2008 (*id*. 29-56), the ALJ concluded in a decision

dated June 23, 2008 that Plaintiff was not disabled.  (*Id*. 12-28.)

As to the sequential evaluation required by law, the ALJ found at step one that

Plaintiff was last insured for disability insurance benefits on March 31, 2003, and had

not engaged in substantial gainful activity since January 2003.  (Tr. 17.)  Thus, he found

that Plaintiff could not be found disabled prior to January 2003.  (*Id*. 18.)  At step two,

the ALJ found that Plaintiff had severe impairments of: "cervical and lumbar spine

degenerative disc disease, bilateral lateral epicondylitis and carpal tunnel syndrome".

(*Id*. 18.)  He concluded that Plaintiff's mental impairments were not severe.  (*Id*. 23.)  At

---

[1]  Epicondylitis is "[a]painful and sometimes disabling inflammation of the muscle and surrounding tissues of the elbow caused by repeated stress and strain on the forearm near the lateral epicondyle of the humerus (arm bone).  http://medical-dictionary.thefreedictionary.com/epicondylitis.

step three, the ALJ found that Plaintiff's impairments did not meet or equal the criteria

for the listings.  (*Id.* 14.)

The ALJ considered Plaintiff's symptoms and limitations and determined that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

symptoms were not credible to the extent they were inconsistent with his residual

functional capacity ["RFC"] assessment.  (Tr. 24-27).  At step four of the sequential

evaluation, the ALJ found that Plaintiff had the RFC for a full range of light work, which

precluded him from his past work.  (*Id.* 24.)  At step five, the ALJ noted that the Medical-

Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21 ["the grids"]

directed a finding of not disabled considering Plaintiff's age, education, work experience,

and RFC.  (*Id.* 27-28.)  Accordingly, the ALJ found that Plaintiff was not disabled under

the Act.  (*Id.* 28.)

On May 20, 2010, the Appeals Council denied review of Plaintiff's claim.  (Tr. 1-

5.)  This action for review followed in a timely manner.  This Court has jurisdiction to

review the decision pursuant to 42 U.S.C. § 405(g).

Plaintiff argues that there is not substantial evidence supporting the ALJ's finding

that he can perform a full range of light work.  He asserts that the ALJ erred in finding

that he did not have a severe mental impairment, and that the ALJ failed to properly

consider all of Plaintiff's severe and non-severe impairments in combination.  Further,

he argues that the ALJ failed to consider the effects of Plaintiff's physical and mental

nonexertional limitations.  Plaintiff also contends that the ALJ's evaluation of Plaintiff's

credibility is not supported by substantial evidence.  Finally, he asserts that the ALJ

committed reversible error by applying the grids to direct a finding that Plaintiff was not

disabled in view of his nonexertional limitations.  I address these arguments below.

II.   ANALYSIS

   A.   Standard of Review

   A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

   "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487

(10th Cir. 1993).

   B.   Whether the ALJ's Decision is Supported by Substantial Evidence

      1.   The ALJ's Findings at Step Two

   Plaintiff first argues that the ALJ erred by finding that his mental impairments

were not severe.  At step two of the sequential evaluation, the ALJ must determine

whether the claimant's alleged impairments are severe.  *Lee v. Barnhart*, No. 03-7025,

2004 WL 2810224, at *1 (10th Cir. Dec. 8, 2004) (unpublished) (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c)).[2]  "'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1521(a); 416.921(a)).  "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'"  *Id.* (quotation omitted).

The Tenth Circuit has explained that case law prescribes a very limited role for step two analysis.  *Lee*, 2004 WL 2810224, at *1.  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."  *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

Even if an impairment is not severe, it does not become irrelevant."  *Mushero v. Astrue*, No. 09-5164, 2010 WL 2530728, at *2 (10th Cir. June 24 2010) (unpublished). "*All* medically determinable impairments, including non-severe impairments, must be taken into account in assessing a claimant's RFC. See 20 C.F.R. §§ 404.1545(a)(2),

---

[2]  Citation to this and other unpublished opinions in this Order are made because I find that they have persuasive value and will assist in the disposition of this case.  *See* 10th Cir. R. 32.1(A).

416.945(a)(2).” *Id.* (emphasis in original); *see also Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009).

I first address Plaintiff's mental impairments.  The ALJ discussed the psychiatric/psychological evidence in the record and found that although Plaintiff's “application alleges that he is unable to work due, in part, to depression, the evidence does not support the conclusion that he cannot perform gainful activity due to any such impairment.” (Tr. 23.)  He stated that “there is no actual evidence the claimant has sought out or required ongoing psychiatric treatment or psychiatric medications.” (*Id.*) He also stated that Plaintiff's “performances” during the psychiatric examinations “have been inconsistent and, while he has generally displayed a depressed and anxious mood, the claimant has not shown any signs of psychosis, pervasive cognitive deficits impacting his memory, attention, concentration, or inability to interact with others in an appropriate manner when required.” (*Id.*)  The ALJ cited the observations of Drs. Sack and Procci in support of that finding.  (*Id.*)

The ALJ also stated that Dr. Procci “assessed the claimant with no more than slight-to-moderate psychiatric deficits.” (Tr. 23.)  Further, the ALJ noted that the state agency found, based on its review of the medical evidence, that Plaintiff had “no more than ‘mild’ deficits of mental functioning” and that Dr. Ness “found the claimant to be malingering” and that his psychiatric problems resulting from a combination of personality disorder and alcohol abuse.  (*Id.*)  Finally, while the ALJ acknowledged that Dr. Marusak diagnosed Plaintiff with bipolar disorder and substance abuse and

considered him to have moderate psychiatric impairments of functioning", the ALJ stated that Dr. Marusak failed to observe any cognitive deficits of Plaintiff.  (*Id.*)

The ALJ concluded as to the mental impairments that "[a]lthough [Plaintiff] appears to have suffered several personal and professional setbacks in recent years and, unfortunately, apparently turned to abusing alcohol and drugs as well, he has offered no evidence of how his reported depression or other mental problems have significantly impacted his ability to function or perform daily living activities."  (Tr. 23.) Thus, the ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe."  (*Id.*)  In making this finding, the ALJ stated that he considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and that Plaintiff "has no more than, at most, mild deficits" in those areas.  (*Id.*)[3]

I find that the ALJ erred at step two in connection with Plaintiff's mental impairments.  I first note that the ALJ appeared to address only the severity of Plaintiff's depression, finding that it was not severe.  (Tr. 23.)  However, Plaintiff was diagnosed with other mental impairments including bipolar syndrome, a personality disorder, and a pain disorder associated with both psychological factors and medical condition.  (*Id.* 262, 391, 395, 662-63.)  An ALJ must consider all of the claimant's medically determinable impairments, singly and in combination.  *Salazar v. Barnhart*, 468 F.3d

---

[3]  These four functional areas include "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Stokes v. Astrue*, No. 07-5046, 2008 WL 1766788, at *2 (10th Cir. 2008) (unpublished).

615, 622 (10th Cir. 2006).  The failure to consider all of the impairments and their

severity is reversible error.  *Id.* (finding that the failure to specifically consider the

plaintiff's impairment of borderline personality disorder documented in the record

required a remand of the case, even though the ALJ stated in his decision that he

considered "all the evidence of record").

Second, the ALJ's evaluation of the medical evidence concerning Plaintiff's

mental impairments was seriously deficient and his analysis of them was therefore

unsupported by substantial evidence.  The medical evidence in the case documents the

existence of long-standing mental impairments by every mental health provider who

examined Plaintiff, even the state agency consultant in the case.

Dr. Sack initially assessed Plaintiff's GAF score as 71 in June 2004, and found

that Plaintiff had no work related impairments.  (Tr. 662-63, 665.)[4]  However, Dr. Procci

found in his comprehensive psychological evaluation of Plaintiff dated June 1, 2006 (*id.*

247-303) that "[t]here clearly appears to be a worsening in Dr. Hiserodt's psychiatric

condition since he was evaluated by Dr. Sack during June 2004."  (*Id.* 264.)  Dr. Procci

assessed Plaintiff with mild to moderate to moderate permanent disability from a

worker's compensation standpoint, and assessed a GAF score of 50 indicative of

serious psychological symptoms.  (*Id.* 268.)[5]

---

[4]  "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  *Langley*, 373 F.3d at 1122 n. 3.  A score between 71 and 80 indicates no more than slight impairment in social or occupational functioning.  *Kohler v. Astrue*, 546 F.3d 260, 262 n. 1 (2nd Cir. 2008) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 2000)) ["DSM-IV"].

[5]  A GAF score between 41 and 50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social,

As support for his opinion, Dr. Procci stated:

Factors of psychiatric disability include depression and anxiety, which substantially interfere with the patient's ability to perform the goal directed activities expected of any employee.  The quality of his sleep is poor, and resulting fatigue occasionally interferes with his ability to relate harmoniously to others, including supervisory staff, coworkers and the general public.  Cognitive impairment intermittently substantially interferes with his ability to receive and retain directives, function autonomously and assimilate new skills.  He is preoccupied with physical symptoms which significantly detracts from his ability to focus on tasks at hand.

In this case, the patient's level of impairment would cause most clinicians to believe he requires psychiatric treatment.  The patient experiences suicidal ideation, and there is evidence of significantly depressed mood and impaired self-image.  His interpersonal relationships are unsatisfying.  His ability to communicate is frequently inhibited by difficulty focusing attention, concentration, and remembering.  There is difficulty adapting to various routine stresses and transitions.  The patient's decision making abilities are at times ineffective.  The level of anger, social withdrawal and irritability interferes with his ability to relate meaningfully to others.  Pain dominates his waking thoughts and interferes with his ability to respond appropriately to routine demands of daily living.

(Tr. 268-69.)

In January 2005, Drs. Halote and Ayvazian diagnosed Plaintiff with "Major

Depressive Disorder, Rule Out Cognitive Disorder", chronic pain, and assessed a GAF

score of 55.[6]  (Tr. 846.)  They stated that "there is no doubt that Mr. Hiserodt has

suffered a classic psychological reaction to his physical injuries and subsequent chronic

---

occupational, or school functioning (e.g., no friends, inability to keep a job).'" *Lee*, 2004 WL 2810224, at *3 (quoting DSM-IV).

   [6]  A GAF score between 51 and 60 indicates "'[m]oderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers).'" *Lee*, 2004 WL 2810224, at *3 (quoting DSM-IV).  According to the Tenth Circuit, such a score does *not* mean that a claimant has only mild restrictions, it indicates the existence of moderate symptoms.  *Groberg v. Astrue*, No. 09-4203, 2011 WL 538870, at *4 (10th Cir. Feb. 17, 2011) (unpublished).

pain." (*Id.* 844.)  These doctors also found that Plaintiff had poor recent and remote memory and that his insight and judgment were poor.  (*Id.* 835.)  They concluded that Plaintiff's "continuing difficulty getting a good night's sleep, which contributes to his depressive symptomatology, irritability, trouble concentrating on any given task, and overall lethargy" as well as his "ongoing physical discomfort" renders disability in all eight work functions".  (*Id.* 846.)  In that regard Drs. Halote and Ayvazian found moderate impairments in seven areas of work function and a slight to moderate impairment in the eighth area of work function.  (*Id.* 848-50.)

Finally, in March 2007 Dr. Marusak assigned Plaintiff a GAF score of 48, also indicative of serious symptoms.  (Tr. 754, 755.)  He assessed moderate to severe impairments in the ability to maintain a work pace appropriate to a given caseload (*id.* 761) and assessed moderate impairments in activities of daily living, social functioning, concentration, persistence and pace, and adaptation (deterioration or decompensation in complex or work-like situations).  (*Id.* 757).  In his Mental Status Examination, Dr. Marusak made medical findings as follows:  "[r]un-on associations are clearly evident, characteristic of a bipolar disorder", "[r]acing thoughts are endorsed", [g]randiosity is notable, "much of patient's thinking is semi, if not actually delusional as to abilities and capacities", and Plaintiff has impaired cognition "with diminished ability to concentrate due to agitation, scatter and hyper-alertness."  (*Id.* 752.)

Dr. Marusak agreed with Dr. Sack's finding in 2004 that Plaintiff's condition regarding his mental impairments was permanent and stationary and found that Plaintiff's condition regarding those impairments was still permanent.  (Tr. 758.)  He

noted that "[f]actors of psychiatric disability include extreme negativity, bipolar symptomatology, manic and depressive in nature; self-destructive behavior of a conscious and unconscious type, and extreme variations in mood, i.e., grandiosity alternating with depression." (*Id.* 759).

The ALJ ignored most of the above findings, and selectively picked out portions of the reports that were favorable to his decision.  This is error which requires a remand, as it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.  *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). This selective application of the evidence is extremely troubling given the significance of the evidence regarding Plaintiff's mental impairments.

For example, the ALJ downplayed Dr. Procci's evaluation of Plaintiff and his GAF score of 50, indicative of serious symptoms, because Dr. Procci "proceeded to assess the claimant with no more than 'slight to moderate' psychiatric deficits. . . ." (Tr. 22.) That is true, but ignores other relevant portions of Dr. Procci's opinion.  Dr. Procci rated Plaintiff from a psychiatric standpoint as having a "permanent disability rated overall as slight to moderate to moderate, based on Worker's Compensation guidelines." (*Id.* 268.)  That is reflected in the findings on the Work Function Impairment Form where he rated Plaintiff's level of impairment on various work functions to be from slight to moderate. (*Id.* 272-73.)  Dr. Procci made clear, however, that this level of impairment for workers' compensation purpose corresponded to the GAF score of 50, indicative of "serious impairment in general functioning, indicative of social occupational, and

educational functioning." (*Id.*) The ALJ ignored all the other findings of Dr. Procci indicating much more serious psychiatric symptoms.[7] To the extent Dr. Procci's report may not have been consistent or was unclear as to the level of disability, the ALJ was required to contact Dr. Procci for clarification, rather than simply discount his report. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

The ALJ also appeared to discount Dr. Marusak's opinions in their entirety because he "failed to observe the claimant to have any cognitive deficits." (Tr. 23.) Indeed, the ALJ relied on findings that Plaintiff showed no signs of deficits in cognitive functioning, signs of psychosis or an inability to interact appropriately with others in determining that Plaintiff's mental impairments were not severe. (*Id.* 22.) I find that this is not supported by substantial evidence. First, Dr. Marusak did find that Plaintiff had cognitive impairments, as did Dr. Procci. Drs. Halote and Ayvazian also noted cognitive impairments, and diagnosed Plaintiff with, among other things, "Rule Out Cognitive Disorder." Second, the absence of some mental or cognitive impairments does not allow an ALJ to discount medical findings and diagnoses as to other documented mental impairments.

The ALJ also discounted an opinion of Dr. Ness, apparently due to the fact that Dr. Ness noted malingering on the part of Plaintiff in connection with test results and

---

[7] Dr. Procci also opined that Plaintiff's "ability to communicate is frequently inhibited by difficulty focusing attention, concentrating, and remembering, "[t]here is difficulty adapting to various routine stresses and transitions", "[t]he patient's decision making abilities are at times inneffective", "[t]he level of anger, social withdrawal and irritability interferes with his ability to relate meaningfully to others" and that "[p]ain dominates his waking thoughts and interferes with his ability to respond appropriately to routine demands of daily living."

attributed Plaintiff's "problems to an antisocial personality and chronic alcoholism." (Tr.

22.)  However, the ALJ's analysis was skewed and ignored other critical findings of

Dr. Ness.  While that doctor did find that Plaintiff was a malingerer (*id.* 611-12), he

nonetheless found that Plaintiff "is chronically and permanently disabled on a

preexisting basis." (*Id.* 613.) He stated that twenty plus years of alcoholism, "adult

antisocial behavior" and "chronic depression" have taken its toll, making it "hard to

maintain adequate self-esteem." (*Id.*) Thus, he stated "[i]f nothing else, the patient's job

history proves the point that this combination of preexisting illness is barely compatible

with sustained employment . . . ." (*Id.*) He also concluded that "[i]n the presence of

moderate level behavior symptoms from alcoholism and personality disorder, with a

mid-range functioning status defined behaviorally (sufficient cognitive capacity,

socialization efforts, employment efforts, et al.), a GAF score of 55 applies." (*Id.*) While

he found that alcohol contributed to those problems, he noted that Plaintiff "performs at

a level of partial disability, progressive over time, with overall moderate behavioral

impairments" from his psychiatric diagnoses, even when alcohol is not being abused.

(*Id.* 612.) The ALJ improperly ignored these opinions.[8]

The ALJ also appeared to believe that the finding of moderate impairments in

functioning means that the impairments can be discounted as being only "mild". For

example, he noted that Dr. Marusak assessed some moderate impairments of activities

---

[8] To the extent the ALJ may have placed emphasis on the fact that Plaintiff's problems may have been attributed, at least in part, to alcohol and/or drug abuse, this was also error. The ALJ was not entitled to rely on alcohol use as a contributing factor as he did not conduct the required drug and alcohol abuse analysis. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

of daily living, social functioning, and attention and concentration.  (Tr. 22.)  I first note that while Dr. Marusak did assess some moderate impairments, he also assessed moderate to severe impairments in the ability to maintain a work pace appropriate to a given caseload.  The ALJ conveniently ignored this fact.  Further, Dr. Marusak concluded that Plaintiff "patient easily moves in the severe category of work function impairment when he needs to be hospitalized psychiatrically, or displays agitated mania and severe depression." (*Id.* 759.)  The ALJ thus again selectively applied the evidence.

However, even as to the moderate impairments, the Tenth Circuit has made clear that the existence of such an impairment is not the same as no impairment at all and must be adequately taken into account by the ALJ.  *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).  Indeed, in *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th Cir. March 26, 2008) (unpublished), the Tenth Circuit noted that the plaintiff's moderate impairments may have decreased her ability to perform work and needed to be taken into account in the hypothetical question.

I also find that the ALJ did not properly consider the GAF scores assigned to Plaintiff.  The ALJ can not simply ignore this evidence, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains." *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. June 28, 2007) (unpublished) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50).  It is true that "[s]tanding alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 2004 WL

2810224, at *3.  The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere.  *Id.*  A GAF score of fifty or less, however, does suggest an inability to keep a job."  *Id.*  Here, the GAF scores in the more immediate time frame all indicated the existence of severe to moderate impairments.  Further, many of the doctors who assigned the GAF scores also documented how the impairments impacted Plaintiff's ability to work.  Accordingly, they needed to be properly considered.

I also find that the ALJ's reliance on the state agency's psychiatric assessment was misplaced.  That assessment was based only on a review of medical records, not on an examination of Plaintiff.  The Tenth Circuit holds that the "'findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'"  *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)).  Where a nontreating medical provider's reports are unaccompanied by thorough written reports or persuasive testimony, as in this case, they are not substantial evidence.  *Id.*[9]  Further, the report is not supported by

---

[9]  The only discussion of the reasons for the state agency providers's findings is a reference to unspecified limitations of an unspecified psychiatrist which are found to not be "supported by objective findings, including ADL's [activities of daily living]."  (Tr. 400.)  This was not explained by the state agency provider, and I find that this does not constitute a thorough explanation as required for reliance on the state agency providers' opinion by an ALJ.  *See Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *14 (10th Cir. Jan. 21, 2011) (unpublished) (finding that very little weight should have been given to a doctor's report discounting a medical opinion that the plaintiff was precluded from performing simple, unskilled work on the basis that "it does not appear to be consistent with the claimant self-reported ADL's" since neither the doctor nor the ALJ explained how the ADL's were "inconsistent with Plaintiff's physical and mental impairments combining in the form of a Pain Disorder and precluding work for a 40-hour week"); *see also Baker v. Barnhart*, No. 03-7041, 2003 WL 22905238, at *3 (10th Cir. Dec. 10, 2003) (unpublished) (finding that a few handwritten notes by the state agency examiner and a statement that the assessment is based on the medical evidence did not

the medical evidence discussed.  Even the state examiner's mental RFC assessment, however, found the existence of moderate impairments in the ability to carry out detailed instructions and the ability to interact appropriately with the general public.  (Tr. 402-03). The ALJ did not properly take these impairments into account.

The above errors are compounded by the fact that the ALJ did not state what weight he gave to the medical evidence and whether there was evidence from treating providers or physicians that needed to be assigned controlling weight standard.  This error applied with respect to all the medical evidence, not just the mental health evidence.  This is reversible error, since the court "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned" to the medical evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight that was given to a medical opinion).

Further, I find that the ALJ's other reasons for finding Plaintiff did not have a severe mental impairment are legally unsupported and/or conclusory.  The Commissioner asserts, for example, that the ALJ's conclusion was supported by the absence of mental health treatment and medication to treat mental impairments.  The absence of mental health treatment does not, however, entitle an ALJ to substitute his judgment for that of the mental health doctors as to the severity (or lack thereof) of the claimant's mental impairments.  An ALJ is not entitled to reject a doctor's opinions

---

constitute a "thorough explanation" and thus did not constitute substantial evidence to support the ALJ's finding).

without adequate justification or to substitute his own medical judgment for that of mental health professionals.  *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

Second, lack of treatment is not a proper consideration in assessing the severity of the mental impairments at step two.  The Tenth Circuit has stated that "the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. *Grotendurst v. Astrue*, No. 09-2132, 2010 WL 1049791, at *4 (March 22, 2010) (emphasis in original) (unpublished).  "This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations."  *Id*.  "Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations."  *Id*.

Cases have also recognized that persons suffering from a mental impairment may not recognize the need for treatment.  *See Allen v. Apfel*, No. 99-3249, 2000 WL 796081, at *4 (10th Cir. June 21, 2000) (unpublished) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  "[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder . . . is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465; *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Further, Dr. Marusak made medical findings as to why Plaintiff would not seek such help.  He found that while there "is a lifetime need for further treatment" for Plaintiff, it would be very difficult for Plaintiff "to show any compliance with psychotherapy and/or medication management" because he "lacks insights, feels he is normal." (Tr. 759.)  Dr. Marusak further stated that bipolar patients who have no insight, as with Plaintiff, "tend to love the state of euphoria and they do no wish to disturb that state with medications.  For this reason, they are often deemed to be medication noncompliant." (*Id.* 759-60.)  Also, Dr. Procci stated that "[m]ost chronic pain patients experience a vicious cycle of biological and psychosocial factors, making effective treatment possible" and that he believed Plaintiff "falls into this category. . . ." (*Id.* 267.) These statements regarding Plaintiff's condition or impairments "are specific medical findings."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  In light of these findings, the ALJ was not entitled to reject the severity of Plaintiff's impairments based on a lack of treatment in the absence of conflicting evidence.  *Id.*

The above errors are "magnified by the fact that the law requires an ALJ to apply a particular analysis anytime he relies on a failure to pursue treatment as a basis to find that claimant is not disabled."  *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21, 2011) (unpublished) (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)).  Before finding that there is a failure to pursue treatment, the ALJ must consider certain factors such as whether the treatment at issue would restore claimant's ability to work; and whether the treatment was refused without justifiable excuse.  *Id.*  Further, a claimant's inability to afford treatment may constitute justifiable

cause for failing to comply with prescribed treatment. *Lee*, 2004 WL 2810224, at *4. The ALJ also did not engage in a proper analysis of these factors.

The ALJ further observed that Plaintiff's performance during the various mental examinations was inconsistent. He also noted that his view of the medical evidence was supported by Plaintiff's own reports, as Plaintiff testified only that he had problems with concentration and getting mentally burned out. (Tr. 48.) Thus, the Commissioner argues that there is no evidence that Plaintiff's mental impairments significantly affected his ability to function or perform daily living activities. However, the mental health professionals who examined Mr. Hiserodt consistently diagnosed mental impairments, including even the stage agency examiner and Dr. Sack. The reports document an increasing severity of the impairments, as discussed above, and diagnosed moderate to severe impairments in functioning as well as GAF scores indicating serious symptoms. The ALJ could not reject the medical opinions of the mental health providers based on his lay judgment that Plaintiff's performance was not consistent or because of his daily activities.

Moreover, there was evidence from the mental health providers that documented how Plaintiff's mental impairments impacted his daily activities. This evidence documented the deterioration of Plaintiff's emotional status in the absence of mental health treatment. (*See* Tr. 758, where Dr. Marusak noted that Plaintiff "is definitely in a downward spiral.") This evidence also supports Plaintiff's argument in his opening brief that he made poor life decisions and self-medicated with alcohol, had difficulty getting along with others, was unsuccessful in his work attempts, was unsuccessful in his

attempt to pass a real estate course, and could not support himself or his family due to his ongoing medical problems. (*See, e.g., id.* at 749, 753-54, 613.)  Given the significance of Plaintiff's mental impairments as documented in the medical evidence and how the impairments impact his daily living, I am stunned that the ALJ could have so cavalierly dismissed these problems as not severe.

I also note that the Commissioner argues that the ALJ could properly reject Dr. Ness' opinion that Plaintiff was chronically and permanently disabled.  He argues that this is not a medical opinion, as the issue of disability is reserved to the Commissioner.  The Commissioner further asserts that a statement by a medical source that a claimant is "disabled" does not mean that a claimant will be found disabled nor will any special significance be given to such an opinion.  I first note that the Commissioner is incorrect in asserting that an opinion as to disability is not a medical opinion.  The Tenth Circuit recently held that a medical provider's opinion that a person is disabled "reflects judgments about the severity of Plaintiff's impairments, about the prognosis for his condition, and about what Plaintiff can still do despite his impairments." *Fuller*, 2011 WL 209527, at *11.  Thus, a psychiatrist's opinion regarding disability "is, by definition, a medical opinion."  *Id.*  Second, "such an opinion may not be disregarded, and 'the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.'"  *Id.* at *10 (quotation omitted). It "must be weighed just as are all medical opinions."  *Id.* at *11.  The ALJ errs when he does not follow this standard.  *Id.* at *10-11.  The decision at issue does not show that the ALJ properly considered or weighed this opinion.

The Commissioner also argues that even if Dr. Ness' opinion was a medical opinion, the ALJ correctly noted that Dr. Ness found Plaintiff to be malingering and offered no opinion on Plaintiff's functional limitations.  Thus, the Commissioner asserts that it is not apparent upon what basis Dr. Ness issued his opinion.  Furthermore, although Dr. Ness indicated that Plaintiff was "disabled," it was in the context of a worker's compensation claim, not the Social Security Act.  The Commissioner asserts that it is thus unclear what Dr. Ness actually meant.  Consequently, he asserts that Dr. Ness' opinion of disability was entitled to little weight.  Again, I disagree.

The Tenth Circuit has stated that an ALJ cannot disregard or reject a medical opinion because of "its confusing nature" or because it is unclear.  *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *9 (April 3, 2009) (unpublished).  That reason is not adequate absent an attempt to recontact the physician.  *Id.*  Since an ALJ has a duty to fully and fairly develop the record as to material issues, *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)), the ALJ should have contacted Dr. Ness for clarification as to the basis that he found Plaintiff to be disabled.  *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (under 20 C.F.R. § 404.1512(e), the ALJ must contact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled); *see also Daniell v. Astrue*, No. 09-2310, No. 2010 WL 2588174, at *4 (10th Cir. 2010) ( ALJ's finding that treating doctors did not give reasons for the severe functional limitations they imposed "triggered the ALJ's duty to seek further development of the record before rejecting their opinions").

The ALJ's treatment of the evidence in the case is similar to that discussed in *Hierstein v. Chater*, No. 96-6233, 1997 WL 158177 (10th Cir. 1997) (unpublished).  The Tenth Circuit noted legal error in that case when, among other things, the ALJ chose "two superficially favorable notations out of a five-year treatment record, downplaying the severity of a chronic mental impairment inherently varying with the vicissitudes of the patient's life", finding that "reflects the kind of misleading selective inquiry courts have decried on numerous occasions."  *Id.* at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) (finding that the ALJ erred when he "summarized the evidence from two mental health practitioners, but failed to discuss all of the significantly probative evidence relevant to Mrs. Carpenter's mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence").  The ALJ erred in the same manner in this case.

Based on the foregoing, I find that this case must be remanded for the ALJ to properly determine the existence of all of Plaintiff's mental impairments from the record and consider whether they are severe, both individually and in combination with Plaintiff's other impairments.  In that regard, I find that the record shows more than a "de minimus" showing of mental impairments such that the ALJ should have moved on to further steps in the analysis as to those impairments.  Further, on remand the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to survive step two. *Carpenter*, 537 F.3d at 1266.

2.     The ALJ's Finding as to Plaintiff's Residual Functional Capacity

Since I find that the ALJ did not properly consider all of Plaintiff's impairments and include them in the RFC, the RFC must also be reassessed on remand.  I also find other errors, however, with the ALJ's RFC analysis.

I first agree with Plaintiff that the ALJ did not properly examine whether Plaintiff suffered from physical and mental nonexertional limitations.  First, as to the physical limitations, I find that the ALJ's conclusion that Plaintiff's manipulative limitations would not impact the light and/or sedentary job base is not supported by substantial evidence. Treating physician Dr. Kim opined that Plaintiff's "upper extremity disability residuals warrant a preclusion from repetitive gripping, grasping, and manipulating."  (Tr. 459-60). This is supported by Dr. Rah's findings.  He stated, "[e]lectrodiagnostic studies of the upper extremity" show evidence of bilateral carpal tunnel syndrome and that an MRI shows "hypertrophy changes in joints of hands."  (*Id.* 683).  Dr. Rah found in a bilateral assessment of Plaintiff's wrist and hands that Plaintiff had "frequent slight pain, becoming frequent moderate upon heavy lifting and repetitive gripping, grasping, pushing, pulling, twisting and turning activities."  (*Id.*)  The ALJ did not properly take these nonexertional limitations into account in connection with his findings.  These limitations are certainly consistent with the severe impairments found by the ALJ, including bilateral carpal tunnel syndrome, and with the evidence of pain found in the record.

The Social Security Administration recognizes that,"[n]onexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle). . . . "

SSR 85-15, 1985 WL 56857, at *2 (1985).  It has also stated that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions" and many unskilled light jobs "require use of arms and hands to grasp and to hold and turn objects."  SSR 83-10, 1983 WL 31251, at *5-6 (1983).  Given the nonexertional limitations in the record regarding Plaintiff's upper extremities, reliance on the grids to find that Plaintiff was not disabled was error.  This also requires a remand of the case.  The ALJ must determine on remand the extent to which the nonexertional limitations impact the job base.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992).

Also, mental impairments are generally considered to be nonexertional, but mental impairments such as "depressions and conversion disorders may limit exertion." SSR 85-15, 1985 WL 56857, at *2.  The medical record documented Plaintiff's physical complaints related to his depression, *e.g.*, fatigue, gastrointestinal problems, and hypertension.  The medical record also documented moderate to severe mental impairments in connection with the ability to perform work functions, as noted in the previous section.  Nonexertional limitations include difficulty functioning because the claimant is nervous, anxious, or depressed, difficulty maintaining attention or concentrating, and difficulty understanding or remembering detailed instructions.  20 C.F.R. § 404.1569a(c)(a).  The ALJ did not proper consider these issues.

On remand, I also direct the ALJ must also address whether Plaintiff can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased

-24-

signs and symptoms of the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440

(quotation omitted).  There was evidence that Plaintiff had impairments in these areas.

For example, Drs. Halote and Ayvazian found that Plaintiff "has continuing difficulty

getting a good night's sleep, which contributes to his depressive symptomatology,

irritability, trouble concentrating on any given task, and overall lethargy."  (Tr. 886.)

Further, SSR 85-15 recognizes that "the mentally impaired may have difficulty

meeting the requirements of even so called 'low stress' jobs."  *Id.*, 1985 WL 56857, at

*6.  Indeed, the ruling states:

> The reaction to the demands of work (stress) is highly individualized, and
> mental illness is characterized by adverse responses to seemingly trivial
> circumstances.  The mentally impaired may cease to function effectively
> when facing such demands as getting to work regularly, having their
> performance supervised, and remaining in the workplace for a full day.

*Id*.

In this case there are medical findings documenting stress in connection with

Plaintiff.  Dr. Toiserkani opined that Plaintiff suffers from chronic pain and that chronic

pain is well known to be productive of emotional stress, that Plaintiff suffers from mental

stress due to his stress, anxiety, depression and insomnia, as well as physical stress

caused by his pain", and that Plaintiff's "complaints of stress, anxiety and pain have

undoubtedly contributed to his new onset of hypertension and symptoms".  (Tr. 882.)

Similarly, Drs. Halote and Ayvazian found that Plaintiff suffers from chronic pain and

that "individuals with chronic pain often experience a worsening of their pain with

stress".  (*Id.* 884-86.)

Finally on remand, the ALJ must keep in mind that RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  SSR 96-8p(1), 1996 WL 374184, at *1 (July 2, 1996); *see also Haga*, 482 F.3d at 1208 (citing 20 C.F.R. § 416.945(c)).  A "regular and continuing basis" means "'8 hours a day, for 5 days a week, or an equivalent work schedule,' S.S.R. 96-8p, 1996 WL 374184, at *2, and to 'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,' S.S.R. 86-8, 1996 WL 68636, at *5."  *Id.*  Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington*, 37 F.3d at 1442 (emphasis in original) (quotation omitted).

3.    The ALJ's Pain and Credibility Findings

I also find that the ALJ did not properly evaluate Plaintiff's complaints of pain.  As noted by Plaintiff, pain testimony should be consistent with the degree of pain that could be reasonably expected from a determinable medical abnormality.  *Huston v. Bowen*, 838 F.2d 1125, 1129 (10th Cir. 1988).  In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms"; however, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment.  (Tr. 25.)

As to pain, the ALJ found that although Plaintiff "does have medically determined orthopedic impairments which could be expected to produce some pain, the intensity and persistence of the pain alleged by the claimant appears to be exaggerated." (Tr. 26.)  He stated that "[b]ecause the claimant's allegations of disability due to pain are based primarily on subjective symptoms, his credibility is a material factor and the inconsistencies and contradictions in the evidence as well as the general lack of medical support and history of treatment commensurate with the claimant's allegations lead the undersigned to concluded that the claimant is not wholly credible."   (*Id.*)

I find that this decision is also not supported by substantial evidence.  The allegations of disability due to pain are not based primarily on subjective symptoms, but are substantiated by Plaintiff's treating and other physicians and medical providers.  The ALJ again selectively picked out portions of the record which he found supported his opinion, such as stating that Plaintiff "generally retained full range of motion and motor strength in his upper extremities" and that Plaintiff has not "experienced spinal stenosis, nerve room compression, or similar problems related to his degeneration" (Tr. 25-26), while ignoring findings that supported Plaintiff's complaints.  Indeed, the record is replete with objective findings that substantiate Plaintiff's complaints of pain (*see, e.g.,* Tr. 455 - myofascial tenderness, 460- "Bilateral paraspinal muscle tenderness, restricted cervical range of motion as measured on exam, diminished bilateral grip strength, tenderness of the volar and dorsal wrists bilaterally...", 639-643 - findings of palpable tenderness findings in upper extremities and recommendation of physical therapy to assist Plaintiff "with the abatement of pain and to help him with his function of

both upper extremities, particularly the elbows and wrists"; 683 - "Electrodiagnostic studies of the upper extremity showing evidence of bilateral carpal tunnel syndrome" and MRI showing hypertrophy changes in joints of hands and stating as to bilateral wrist and hands that Plaintiff had "frequent slight pain, becoming frequent moderate upon heavy lifting and repetitive gripping, grasping, pushing, pulling, twisting and turning activities").

The record also includes medical findings and diagnoses substantiating the complaints of pain.  For example, Dr. Procci diagnosed a pain disorder associated with both psychological factors and medical condition and stated that "[t]he examining physicians are in agreement that there are organic injuries that are responsible for Dr. Hiserodt's musculoskeletal pain".  (Tr. 267.)  Dr. Sperry diagnosed, among other things, "cervical discogenic pain, thoracic discogenic pain, and lumbar discogenic pain" and referred Plaintiff to pain management.  (*Id.* 678.)  He also found that "since Dr. Kim found Mr. Hiserodt permanent and stationary in July 2001, there have been significant changes in the patient's neck and back, which are consistent with his subjective complaints and need for further treatment noted in my report. . . . [a]ll of the subjective factors noted in Dr. Kim's report have increased to continuous complaints of symptomology."  (*Id.*)

I also note that Dr. Rah, who took over for Dr. Sperry, noted tenderness in Plaintiff's cervical, thoracic and lumbar spine and wrists and hands, diagnosed bilateral carpal tunnel syndrome, multilevel disc protrusions and Cr-5 and C5-6, thoracic spondylosis, strain/sprain lumbar spine, and bilateral wrist tendinitis, and stated, "[t]he

-28-

patient is persistent in experiencing ongoing symptoms in his neck upper back, lower

back in addition to pain and numbness in both wrists and hands". (Tr. 681-85.) He

assessed a 65% permanent disability with regard to Plaintiff's back, wrists and arms.

(*Id.* 362-63.) Finally, pain management physician Dr. Valdez found that "[t]he patient's

subjective pain complaints in his neck extending down his arms with cervical disk

protrusions are consistent with this opinion for cervical radiculitis" and that the

conservative therapy Plaintiff underwent "has been unsuccessful in treating his pain".

(*Id.* 689). The Tenth Circuit has indicated that "objective medical evidence of disabling

pain need not consist of concrete physiological data alone but can consist of a medical

doctor's clinical assessment as well. . . ." *Gatson v. Bowen*, 838 F.2d 442, 447 (10th

Cir. 1988).

Based on the foregoing, the clinical findings by the physicians and medical

providers appeared to amply support Plaintiff's claims regarding the severity, frequency,

and duration of his symptoms, including pain. As in *Romero v. Astrue*, No. 06-6305,

2007 WL 2110899, at *2 (10th Cir. 2007) (unpublished), the physicians' conclusions

concerning Plaintiff's "pain and limitation. . . find support in the treatment records and

therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical

evidence." *Id.* at *2. Further, no doctor appeared to discount or disbelieve the

allegations of pain. Indeed, Plaintiff was referred to pain management in an attempt to

treat the pain which ultimately was unsuccessful.

Accordingly, I find that the ALJ erred in discounting the medical findings and

diagnoses of the medical providers regarding Plaintiff's pain. On remand, the ALJ must

reassess the impact of Plaintiff's pain on his ability to work.  Even if, on remand, the ALJ

finds that Plaintiff's pain, by itself, is not disabling, "that is not the end of the inquiry."

*Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994)

(unpublished).  "The [Commissioner] must show that 'jobs exist in the national economy

that the claimant may perform *given the level of pain [she] suffers.*'"  *Id.* (quoting

*Thompson*, 987 F.2d at 1490-91 (further quotations omitted).  "A vocational expert is

ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's]

ability to do . . . work."  *Id.*

As to that issue, the ALJ found that "none of the claimant's treating or examining

sources have assessed him with specific functional limitations and none have asserted

that he is incapable of performing any work-related activities.  (Tr. 26.)  That is incorrect.

Treating physician Dr. Kim noted both subjective and objective factors of disability

regarding Plaintiff's pain, found that Plaintiff's "orthopedic condition is now permanent

and stationary for disability rating purposes", and stated that Plaintiff's "upper extremity

disability residuals warrant a preclusion from repetitive gripping, grasping, and

manipulating."  (*Id.* 459-60).

The ALJ also stated that no treating or examining source prescribed the need for

surgery, physical therapy or pain management.  Again, this is not accurate, as

Dr. Spencer referred Plaintiff for pain management and Plaintiff underwent physical

therapy and many other types of treatments in an attempt to alleviate the pain.  (*See* Tr.

689 - "The patient has had conservative therapy, consisting of physical therapy and oral

analgesics, which has been unsuccessful in treating his pain"; 502 - notation by

Dr. Chun that he was attempting to control the patient's pain with the use of analgesic medications in conjunction with physiotherapy and supportive care; 473 - chiropractic and physical therapy assessment noting that Plaintiff did not improve significantly with treatment; *see also* 544 - finding by Dr. Miller that Plaintiff gets treatment once or twice a week but only gets a "temporary benefit" from the treatment for his symptoms). Further, Dr. Rah noted the need for possible surgical intervention.  (*Id.* 363.)  The ALJ did not properly take these things into account.  *See Carpenter*, 537 F.3d at 1268 (finding that the pain analysis was inadequate when, among other things, the did not link his conclusions to the evidence or explain how the plaintiff's repeated attempts to find relief from pain, and all the drugs she was prescribed for pain, resulted in a conclusion that she was unlimited in any regard by pain or the side effects from her pain medication).

Further, to the extent that the ALJ relied on concerns about malingering, the ALJ failed to consider the fact that Plaintiff was diagnosed with a pain disorder associated with both psychological factors and a medical condition stemming from organic injuries. (Tr. 262, 267; *see also* 846 - finding of Drs. Halote and Ayvazian that "there is no doubt that Mr. Hiserodt has suffered a classic psychological reaction to his physical injuries and subsequent chronic pain").  Indeed, nearly every psychological evaluation documented a pain disorder demonstrated by preoccupation by the Plaintiff with his physical problems or somatic complaints, feelings of victimization, and self-medication with alcohol.  (*See, e.g.*, Tr. 735-64.)  Thus, the pain has both an organic and a psychological component which may have caused Plaintiff to unconsciously magnify his

pain.  This has to be properly considered on remand.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (finding that the ALJ erred in not considering "'the possibility that psychological disorders combined with physical problems,'" the diagnosis of a somatoform disorder, and in not treating "plaintiff's somatic preoccupation as a manifestation of his mental impairment or considering how that impairment, along with plaintiff's depression and anxiety, affected his perception of pain") (quotation omitted).

Finally, I find other errors with the ALJ's credibility analysis.  The ALJ noted Plaintiff's attempts to work and attend school despite his impairments as a negative factor weighing against his credibility.  (Tr. 26.)  However, a claimant's prior unsuccessful attempt to work lends support to a finding that a claimant cannot work or of disability, not a finding that a claimant can work as the ALJ seemed to conclude in this case.  *See Hierstein*, 1997 WL 158177, at *3 (finding that "reliance on. . . abortive work efforts as evidence of *non* disability-suggested here by the ALJ's comment that even plaintiff's unsuccessful employment efforts 'reflect negatively upon the claimant's general credibility,' . . . is contrary to controlling law") (citing cases); *see also Washington*, 37 F.3d at 1441; *Tyson v. Apfel*, 107 F. Supp. 2d 1267 (D. Colo. 2000).

The ALJ also failed to properly take into account the fact that Plaintiff received a workers compensation determination that he was entitled to a 65 percent permanent disability award.  (Tr. 169.)  In October 2008, the rating was increased to 80 percent.  (*Id.* 199.)  Those findings serve to bolster the credibility of Plaintiff's subjective complaints.  Although the Commissioner is "not bound by disability decisions by other governmental and nongovernmental agencies[,] . . . the adjudicator should explain the

consideration given to these decisions."  SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9,

2006).  "These decisions, and the evidence used to make these decisions, may provide

insight into the individual's mental and physical impairment(s). . . ."  *Id.*  Here, the ALJ

did not explain whether or to what extent he considered those findings.  If the ALJ was

unclear about how these findings translate into the context of disability for social

security purposes or into functional impairments, the ALJ should have contacted the

physician on this issue.  This also needs to be adequately addressed on remand.

III.    CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly determine and

assess all of Plaintiff's mental impairments, erred in determining that Plaintiff's mental

impairments were not severe at step two, and did not properly consider the combination

of all Plaintiff's impairments.  I also find that the RFC assessment was not supported by

substantial evidence as it did not take into account Plaintiff's mental impairments and

his nonexertional impairments, and that the ALJ erred in assessing Plaintiff's pain and

credibility.  Accordingly, this case must be remanded to the Agency for further fact

finding on these and the other issues discussed in this Order.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated August 25, 2011

                              BY THE COURT:

                              s/ Wiley Y. Daniel
                              Wiley Y. Daniel
                              Chief United States District Judge